IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| **CHRIS STEWART,** | |
| Plaintiff, | Case No. 5:24-cv-06123-RK |
| vs. | |
| **HY-VEE, INC.,** | |
| Defendant. | |

## SUGGESTIONS IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.    STATEMENT OF UNCONTROVERTED FACTS ....................................... 2

     **Background Information About Hy-Vee And Key Witnesses** ..................................... 2

     **Background Information about Plaintiff** ........................................................... 6

     **Plaintiff's Employment And Accommodations Provided** ............................................ 6

     **Knowledge of Plaintiff's Impairments** ............................................................ 9

     **The Theft Policy** ...................................................................................... 11

     **The Theft Event** ...................................................................................... 13

     **The Theft is Reported and Investigated** .......................................................... 15

     **Creation of the Still Shots** ......................................................................... 18

     **The Termination Meeting** .......................................................................... 19

     **Events After the Termination Meeting** .......................................................... 21

     **Relevant Purchase Information** ................................................................... 23

     **The Video** ............................................................................................. 24

     **Misc.** ................................................................................................... 24

III.    ARGUMENT ............................................................................................. 26

     A.     SUMMARY JUDGMENT STANDARD .......................................................... 26

     B.     HY-VEE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON BOTH OF PLAINTIFF'S CLAIMS. .......................................................... 26

         1.     Plaintiff cannot establish a *prima facie* case for either of his claims ........................................................................................... 27

             a.     Plaintiff cannot establish a *prima facie* case of age discrimination ......................................................................... 27

          **b.**       **Plaintiff cannot establish a *prima facie* case of disability discrimination**.................................................................................**29**

    **2.**      **Hy-Vee's Legitimate Non-Discriminatory Reason.** ............................**31**

    **3.**      **Plaintiff cannot establish pretext.**............................................................**32**

**IV.**     **CONCLUSION** .............................................................................................................**36**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashby v. Woodridge of Missouri, Inc.*,
673 S.W.3d 537 (Mo. App. 2023) ..................................................................................29

*Bloom v. Metro Heart Grp. of St. Louis, Inc.*,
440 F.3d 1025 (8th Cir. 2006) ......................................................................................26

*Britton v. City of Poplar Bluff, Mo.*,
244 F.3d 994 (8th Cir. 2001) ........................................................................................31

*Broadwater v. Minnesota Dept. of Human Servs.*,
22 F.Supp.3d 989 (D.Minn.2014) ................................................................................36

*Burton v. Mayorkas*,
No. 4:19-CV-01026-BCW, 2021 WL 5541952 (W.D. Mo. July 13, 2021) ............................35

*Button v. Dakota, Minnesota & Eastern Railroad Corporation*,
963 F.3d 824 (8th Cir. 2020) ........................................................................................32

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......................................................................................................26

*Chavira v. Crown Cork & Seal USA, Inc.*,
No. CIV. 13-1734, 2015 WL 4920094 (D. Minn. Aug. 18, 2015) .........................................36

*Depositors Ins. Co. v. Wal-Mart Stores, Inc.*,
506 F.3d 1092 (8th Cir. 2007) ......................................................................................26

*Dowling v. Boeing Company*,
No. 4:21-CV-01414-SRC, 2023 WL 2645566 (E.D. Mo. Mar. 27, 2023) ..............................30

*Edmund v. MidAmerican Energy Co.*,
299 F.3d 679 (8th Cir. 2002) ........................................................................................34

*Eivins v. Missouri Dep't of Corr.*,
636 S.W.3d 155 (Mo. App. 2021) ..................................................................................27

*Gunderson v. BNSF Ry. Co.*,
850 F.3d 962 (8th Cir. 2017) ........................................................................................34

*Harris v. Polk County, Iowa*,
103 F.3d 696 (8th Cir. 1996) ........................................................................................36

*Humphrey v. Dresser-Rand Co.*,
   No. 2:12CV32 JCH, 2013 WL 4805804 (E.D. Mo. Sept. 9, 2013) .........................................35

*Husinga v. Federal-Mogul Ignition Co.*,
   519 F.Supp.2d 929 (S.D. Ia. 20074) ......................................................................................30

*Hutson v. McDonnell Douglas Corp.*,
   63 F.3d 771(8th Cir. 1995) ...................................................................................................34

*Jenkins v. Radisson Hotel*,
   No. CIV. 07-5073, 2008 WL 544828 (W.D. Ark. Feb. 26, 2008)..........................................28

*Johnson v. Midwest Division - RBH, LLC*,
   88 F.4th 731 (8th Cir. 2023) .............................................................................................27, 29

*Johnson v. Westinghouse Air Brake Technologies Corporation*,
   No. 22-00560-CV-W-GAF, 2023 WL 6037434 (W.D. Mo. Aug. 8, 2023),
   aff'd, 104 F.4th 674 (8th Cir. 2024) .......................................................................................28

*Liles v. C.S. McCrossan, Inc.*,
   851 F.3d 810 (8th Cir. 2017) .................................................................................................35

*McConnell v. Pioneer Hi-Bred Int'l, Inc.*,
   260 F.3d 958 (8th Cir. 2001) .............................................................................................30, 31

*McCullough v. Real Foods, Inc.*,
   140 F.3d 1123 (8th Cir. 1998) ...............................................................................................34

*McCullough v. Univ. of Ark. for Med. Scis.*,
   559 F.3d 855 (8th Cir. 2009) .................................................................................................34

*McDonnell Douglas Corp. v. Green*,
   411 U.S. 792 (1973)...............................................................................................................27

*McDonnell Douglas. Stuart v. General Motors Corp.*,
   217 F.3d 621 (8th Cir. 2000) .................................................................................................26

*McElwee v. County of Orange*,
   700 F.3d 635 (2d. Cir. 2012)..................................................................................................36

*McKay v. U.S. Dept. of Transp.*,
   340 F.3d 695 (8th Cir. 2003) .................................................................................................34

*Miller v. National Cas. Co.*,
   61 F.3d 627 (8th Cir. 1995) ...................................................................................................30

*Morrow v. Guitar Center Stores, Inc.*,
   No. 4:21-CV-00721-DGK, 2023 WL 2531734 (W.D. Mo. Mar. 15, 2023)............................30

iv

*Moye v. Kansas City Southern Railway Company*,
No. 15-00423-CV-W-GAF, 2018 WL 11411322 (W.D. Mo. Aug. 22, 2018) ........................30

*Pruett v. Krause Gentle Corp.*,
226 F.Supp.2d 983 (S.D. Ia. 2002) ......................................................................................32

*Reed v. City of St. Charles, Mo.*,
561 F.3d 788 ........................................................................................................................28

*Richey v. City of Independence*,
540 F.3d 779 (8th Cir. 2008) ...............................................................................................34

*Smith v. Monsanto Chemical Co.*,
770 F.2d 719 (8th Cir. 1985) ...............................................................................................32

*Torgerson v. City of Rochester*,
643 F.3d 1031 (8th Cir. 2011) .............................................................................................32

*Williams v. FedEx*,
No. 4:21-CV-00980-PLC, 2022 WL 179232 (E.D. Mo. Jan. 20, 2022)...............................28

**Other Authorities**

Fed. R. Civ. P. 56(a) .......................................................................................................................26

v

## I. INTRODUCTION

Not surprisingly, Hy-Vee has a well-established, widely known policy against theft. In this case, Plaintiff admittedly took merchandise from the employee discount rack, took it into a room in the back of the store, put it in a grocery bag without paying for it, took the bagged merchandise into the restroom, and then left the store. Plaintiff does not remember whether he paid for the merchandise or not.

Another employee saw Plaintiff do this and reported the incident to the Store Director. The Store Director and other managers watched video and saw Plaintiff take the merchandise and leave the store without paying for it. Just to be sure, they then watched video at all points of sale to ensure Plaintiff had not paid for the merchandise, but that only confirmed he had not paid.

As a result, and consistent with *every other occasion* when the Store Director has become aware an employee stole merchandise, the Store Director terminated Plaintiff's employment. During the termination meeting, Plaintiff stated he thought he had paid for the merchandise with his debit card. Again, just to be sure, management searched the stores records in an effort to find a sale showing Plaintiff had paid for the merchandise, but the sales records confirmed Plaintiff had not purchased the chips. Accordingly, Plaintiff's termination stood.

Approximately five months later, long after the video had recorded over the day of Plaintiff's theft, Plaintiff filed a charge of discrimination alleging Hy-Vee terminated his employment due to his age or his disabilities. Even giving Plaintiff every benefit of the doubt, the record is devoid of evidence that the decision to terminate Plaintiff's employment had anything at all to do with his age (44) or his disabilities, of which the Store Director was not even aware.

1

Based on the undisputed evidence in this case, Plaintiff cannot even establish the *prima facie* elements of his claims, let alone pretext. Accordingly, Hy-Vee is entitled to judgment as a matter of law.

## II. STATEMENT OF UNCONTROVERTED FACTS

Hy-Vee offers the following "facts" for purposes of this Motion, which assume the truth of Plaintiff's testimony. In actuality, Hy-Vee disputes many of the statements set forth but assumes their truth for purposes of this Motion.

### Background Information About Hy-Vee And Key Witnesses

1. Hy-Vee has a policy against discrimination on the basis of age, disability, and other characteristics protected by laws. Ex. 1, Pltf's depo. 104:14-21; Ex. 2, Riddle Depo. 16:24-17:19; Ex. 3, Depo. Ex. 8.

2. The policy is contained in the employee handbook, of which Plaintiff received a copy, and Plaintiff was aware of the policy. Ex. 3, Depo. Ex. 8; Ex. 1, Pltf's depo. 97:4-16, 104:14-21; Ex. 4, Depo. Ex. 7.

3. Hy-Vee works with employees to accommodate their disabilities to allow them to perform the essential functions of their positions. Ex. 2, Riddle depo. 25:10-20; Ex. 5, Riddle Decl. ¶ 4; Ex. 6, Dolph depo. 27:15-18, 104:8-105:5.

4. For example, the St. Joseph Hy-Vee regularly accommodates employees by providing stools, allowing additional breaks, allowing a reduced schedule, and helping with lifting requirements, to name a few examples. Ex. 5, Riddle Decl. ¶ 5.

5. In addition, employees at the St. Joseph store regularly take leaves of absence for medical reasons. Ex. 5, Riddle Decl. ¶ 6.

2

6. Employees often work with their Department Managers to obtain accommodations, although they can work with the HR Manager or other store management if they prefer, and Department Managers often refer the issue to the HR Manager. Ex. 6, Dolph depo. 34:9-21; Ex. 2, Riddle depo. 26:8-21, 29:15-24.

7. During the relevant period of time, Rod Dolph was the Store Director overseeing the St. Joseph store. Ex. 7, Dolph Decl. ¶ 3.

8. Tina Evans was (is) the Store Manager, who reports directly to Mr. Dolph. Ex. 7, Dolph Decl. ¶ 5.

9. The managers immediately under the Store Manager in Hy-Vee store hierarchy are generally referred to as "Managers Of." Ex. 7, Dolph Decl. ¶ 6; Ex. 5, Riddle Decl. ¶ 7; Ex. 9, Lewis Decl. ¶ 4;

10. The type and number of Managers Of vary by store but include Managers of Perishables, Managers of General Merchandise, Managers of Store Operations, and Managers of Health, Wellness and Home. Ex. 7, Dolph Decl. ¶ 7.

11. Department Managers are at the level below Managers Of, but depending on the issue, they may report to a Manager Of, the Store Manager, or the Store Director. Ex. 7, Dolph Decl. ¶ 8.

12. At the time of Plaintiff's termination, Alyssa Lewis was the Manager of Store Operations, Barry Stewart (Plaintiff's brother) was the Produce Manager, and Cate Riddle was the HR Manager. Ex. 1, Pltf's depo. 135:17-20; Ex. 6, Dolph depo 13:8-24, 19:8-14; Ex. 8, Lewis depo. 5:10-11; Ex. 2, Riddle depo. 10:10-20.

13. The St. Joseph Hy-Vee employs approximately 350 people at any given time. Ex. 6, Dolph depo. 17:5-14.

3

14.     There is a fair amount of turnover among part-time employees, resulting in regular hiring of approximately 12 employees per month to replace those who have left. Ex. 5, Riddle Decl. ¶ 13.

15.     Rod Dolph's year of birth is 1967. Ex. 7, Dolph Decl. ¶ 2.

16.     Mr. Dolph began working for Hy-Vee in 1985. He received promotions throughout the years and first became a manager in 1989. Ex. 7, Dolph Decl. ¶¶ 9, 10.

17.     Mr. Dolph became a Store Director in 2005 and initially managed the store in Jefferson City, Missouri. Ex. 7, Dolph Decl. ¶ 11.

18.     Mr. Dolph held the Store Director position at the Jefferson City store until April 2021, when he became the Store Director at the St. Joseph store. Ex. 6, Dolph depo. 13:11-24, 20:12-18.

19.     Ms. Lewis's year of birth is 1993. Ms. Lewis has a disability for which she requires accommodations on occasion, and she has never had any problem getting accommodations she needs, including time off. Ex. 9, Lewis Decl. ¶¶ 2, 7, 8.

20.     Ms. Riddle's year of birth is 1949. Ex. 5, Riddle Decl. ¶ 2.

21.     Ms. Riddle began working for Hy-Vee in 2015 and worked at various stores and in various positions until July 2021, when she began as the HR Manager at the St. Joseph store. Ex. 2, Riddle depo. 10:7-18, 12:22-13:25.

22.     Ms. Riddle's experience with Mr. Dolph is that he always tries to do the right thing and requests enough information so he can make sound decisions. Ex. 2, Riddle depo. 20:11-21:11.

4

23. Richard[1] "Archie" Kane's year of birth is 1958. Ex. 10, Kane Decl. ¶ 2.

24. Mr. Kane has worked for Hy-Vee for 25 years and has been working at the St. Joseph store since 2013. Ex. 11, Kane depo. 5:15-24.

25. Mr. Kane is the Assistant Seafood Manager at the St. Joseph store, which is the position he held at the time of Plaintiff's termination. Ex. 11, Kane depo. 6:3-16.

26. Currently, the St. Joseph Hy-Vee employs 91 regular-time and full-time employees.[2] Ex. 5, Riddle Decl. ¶ 32.

27. Of those, 48 are more than 40 years old, 31 are more than 50 years old, 17 are more than 60 years old, and 3 are more than 70 years old. Ex. 5, Riddle Decl. ¶ 33.

28. Two of the three full-time employees who are more than 70 years old and currently working at the St. Joseph Hy-Vee were hired when Mr. Dolph was the Store Director. Ex. 5, Riddle Decl. ¶ 34.

29. In fact, Ms. Riddle was 71 years old when she applied to be the HR Manager at the St. Joseph store. *Id*. at ¶ 35.

30. Mr. Dolph interviewed and hired her. *Id.* at ¶ 35; Ex. 7, Dolph Decl. ¶ 38.

31. The store also employs 76 part-time employees over the age of 40, including 47 employees who are over the age of 60, 20 who are over the age of 70, and eight who are over the age of 80. Ex. 5, Riddle Decl. ¶ 36.

---

[1] Richard Kane goes by the name "Archie." Ex. 10, Kane Decl. ¶ 3. He has been erroneously identified as Archie Campbell in some of the testimony, but the person who reported Plaintiff's odd behavior to Mr. Dolph was Richard "Archie" Kane. Ex. 7, Dolph Decl. ¶ 34; Ex. 5, Riddle Decl. ¶¶ 28, 29; Ex. 9, Lewis Decl. ¶ 62.

[2] Full-time employees are guaranteed 40 hours per week. Regular time employees are guaranteed 30 hours per week. Both are eligible for the full-time benefits package. Part-time employees do not have a guaranteed number of hours are not eligible for the full-time benefits package. Ex. 5, Riddle Decl. ¶¶ 9-11.

5

32.     Two of the three full-time employees currently working in the Produce Department are more than 40 years old. Ex. 5, Riddle Decl. ¶ 37.

33.     Specifically, Produce Clerk Philip Henderson was born in 1957, and Produce Manager, Barry Stewart was born in 1980. Ex. 5, Riddle Decl. ¶ 38.

**Background Information about Plaintiff**

34.     Plaintiff's year of birth is 1979. Ex. 1, Pltf's depo. 8:20-21.

35.     Plaintiff was diagnosed with ulcerative colitis when he was 15 or 16 years old and with related rheumatoid arthritis. Ex. 1, Pltf's depo. 20:5-23:11.

36.     When Plaintiff wakes up in the morning, it takes a while for his hands to get moving, but once they do, he is able to function normally throughout the day. Ex. 1, Pltf's depo. 23:21-25:21, 27:2-10.

37.     Plaintiff was diagnosed with osteomyelitis in 2017 or 2018. Ex. 1, Pltf's depo. 27:11-28:6.

38.     As a result of that condition, Plaintiff had the big toe on his left foot removed in 2018 and also has neuropathy and nerve pain in his feet. Ex. 1, Pltf's depo. 27:12-28:20.

39.     Plaintiff is able to stand and walk, but standing and walking often or for long periods of time is painful. Ex. 1, Pltf's depo. 28:21-30:2.

40.     When Plaintiff was in high school, he was also diagnosed with depression and bipolar II disorder. Ex. 1, Pltf's depo. 31:20-32:6.

**Plaintiff's Employment And Accommodations Provided**

41.     Plaintiff first worked for Hy-Vee in the Chinese Department at a Kansas City location from July 2011 until December 2011 when he left voluntarily. Ex. 1, Pltf's depo. 16:6-15, 82:3-24; Ex. 12, Depo. Ex. 6.

6

42. Plaintiff was rehired at the St. Joseph Hy-Vee in June of 2016 to work as a clerk in the Kitchen. Ex. 1, Pltf's depo. 84:13-85:24; Ex. 12, Depo. Ex. 6.

43. In October 2017, Plaintiff was promoted to Assistant Kitchen Manager and became a full-time employee. *Id.*

44. In May 2018, Plaintiff took a leave of absence to have a toe amputated. Ex. 1, Pltf's depo. 85:25-86:7.

45. In August 2018, Plaintiff returned from his leave of absence and remained employed in the same position until he voluntarily resigned in May 2019. Ex. 1, Pltf's depo. 86:8-11; Ex. 12, Depo. Ex. 6.

46. Plaintiff began his most recent stint of his employment as a part-time employee in the Produce Department in May 2021 and became a regular time employee in that Department in May 2022. Ex. 1, Pltf's depo. 86:8-11, 90:6-91:5; Ex. 12, Depo. Ex. 6; Ex. 5, Riddle Decl. ¶ 39.

47. Plaintiff worked primarily in the trim room (as opposed to on the floor), preparing and packaging produce items for sale, such as fruit and veggie trays, caramel apples, chocolate covered strawberries, etc. Ex. 1, Pltf's depo. 91:16-93:6, 105:18-24.

48. Other Produce Clerks were in charge of unloading the truck, putting product on the floor, and rotating the stock in the cooler, and Plaintiff helped with those duties occasionally as well. Ex. 1, Pltf's depo. 94:11-95:18.

49. In June 2021, Plaintiff was seen by a doctor for an ulcer on his toe. Ex. 1, Pltf's depo. 109:18-110:2.

50. On June 4, 2021, Plaintiff provided Hy-Vee with a note stating that he could return to work on June 7, 2021, but must be allowed to sit when possible with a clean and dry

7

environment. It further stated Plaintiff should wear shoes and not stand in wet conditions. Ex. 13, Depo. Ex. 11; Ex. 1, Pltf's depo. 109:18-110:12.

51. At that point in time, Plaintiff's supervisor was Barry Stewart (Plaintiff's brother). Ex. 1, Pltf's depo. 107:23-108:5, 158:11-159:3.

52. Although there were times Plaintiff went into the cooler where it is wet, no one asked him to do that. Ex. 1, Pltf's depo. 110:13-111:1.

53. Plaintiff talked to his brother about that, and his brother told him to ask someone else to do it next time or to wait until someone else did it. Ex. 1, Pltf's depo. 111:2-9.

54. Plaintiff does not believe his brother should have done more to help with that issue. Ex. 1, Pltf's depo. 111:10-14.

55. Hy-Vee also allowed Plaintiff to miss shifts or leave work early due to physical pain or because he was struggling mentally. Ex. 1, Pltf's depo. 107:6-18.

56. Plaintiff's brother (and supervisor) called him a couple times and said, "Hey, you know, are you feeling better? You really need to be here." Ex. 1, Pltf's depo. 107:23-108:10.

57. But Plaintiff was never disciplined for leaving work early or not coming to work. Ex. 1, Pltf's depo. 107:19-22.

58. And Plaintiff's brother/supervisor never said anything Plaintiff felt was insensitive or inappropriate in terms of asking Plaintiff to be at work. Ex. 1, Pltf's depo. 108:22-109:1.

59. During his employment, Hy-Vee also provided Plaintiff with a chair, which he used if he needed to sit. Ex. 1, Pltf's depo. 51:22-53:6.

60. The chair was not at a good height for some of the work Plaintiff needed to do, but he never requested a chair that was a different height. Ex. 1, Pltf's depo. 52:1-53:9.

61.     With the ability to sit when he needed to sit, with the help of his co-workers to carry things out when Plaintiff did not feel like he could do that, and with the ability to take time off when he needed to do that, Plaintiff was able to perform the essential functions of his position. Ex. 1, Pltf's depo. 109:5-15.

62.     Plaintiff never asked for an accommodation he did not receive. Ex. 1, Pltf's depo. 53:10-14.

63.     Plaintiff was a good employee and did not receive discipline for any reason during his employment at Hy-Vee. Ex. 1, Pltf's depo. 111:17-113:6; Ex. 14, Depo. Ex. 12; Ex. 15, Depo. Ex. 20; Ex. 6, Dolph depo. 36:6-16; Ex. 2, Riddle depo. 29:25-30:3.

64.     Plaintiff's supervisors said things to motivate him in an uplifting way, but no one ever criticized his work performance. Ex. 1, Pltf's depo. 112:10-113:6.

**Knowledge of Plaintiff's Impairments**

65.     Plaintiff did not have any conversations about his impairments with anyone at the "Manager Of" level or above. Ex. 1, Pltf's depo. 48:12-49:11.

66.     During Plaintiff's employment, Mr. Dolph had no knowledge that Plaintiff suffered from osteomyelitis or any other chronic illness. Ex. 6, Dolph depo. 33:11-24; Ex. 7, Dolph Decl. ¶ 39.

67.     Mr. Dolph also had no knowledge that Plaintiff suffered from anxiety or depression. Ex. 6, Dolph depo. 33:20-24; Ex. 7, Dolph Decl. ¶ 40.

68.     Mr. Dolph had no knowledge that Plaintiff had any amputations or other surgeries and no knowledge Plaintiff received workplace accommodations. Ex. 6, Dolph depo. 33:25-34:8, 34:22-25.

9

69.     Ms. Riddle was also unaware that Plaintiff had osteomyelitis and unaware he had diagnosed mental impairments. Ex. 2, Riddle depo. 26:22-27:2, 29:11-14.

70.     Ms. Riddle was aware Plaintiff had previously had a toe or toes amputated, but she was not aware that required any accommodation. Ex. 2, Riddle depo. 27:6-28:19.[3]

71.     Ms. Lewis was aware Plaintiff walked with a limp, but she had no information about Plaintiff's impairments and had no reason to believe Plaintiff needed or would need any workplace accommodations. Ex. 8, Lewis depo. 7:19-8:16; Ex. 9, Lewis Decl. ¶ 5.

72.     Mr. Kane remembers Plaintiff wearing a boot occasionally and was aware he walked with a limp, but he had no information about Plaintiff's medical conditions and had no reason to believe Plaintiff needed or would need any workplace accommodations. Ex. 11, Kane depo. 10:22-11:14, 54:12-55:4; Ex. 10, Kane Decl. ¶ 8.

73.     Sometime before Plaintiff's termination, he planned to have another surgery to amputate additional toes. Ex. 1, Pltf's depo. 57:13-58:20.

74.     The only people at Hy-Vee Plaintiff told of this plan were Barry Stewart, Sam Ajuzie (the Kitchen Manager), the Assistant Produce Manager, and three Produce Clerks. Ex. 1, Pltf's depo. 57:20-58:20.

75.     None of the people involved in the investigation into Plaintiff's theft had any knowledge that Plaintiff planned to have another surgery. Ex. 2, Riddle depo. 28:20-23; Ex. 7, Dolph Decl. ¶ 43; Ex. 9, Lewis Decl. ¶ 6; Ex. 10, Kane Decl. ¶ 9; *see also* Ex. 1, Pltf's depo. 58:21-

---

[3] Neither Mr. Dolph nor Ms. Riddle worked at the St. Joseph Hy-Vee when Plaintiff had his 2018 surgery. *See* SOF 18, 21, 44, 45. Although Mr. Dolph was the Store Director when Plaintiff brought in the doctor's note in Exhibit 13, he was unaware of it, and Ms. Riddle did not yet work at the store. Ex. 7, Dolph Decl. ¶ 41 ; *see also* SOF 21.

10

23 (stating Plaintiff has no reason to believe the people he informed of his upcoming surgery told anyone else).

**The Theft Policy**

76. Hy-Vee has a policy against theft. Ex. 1, Pltf's depo. 100:3-16; Ex. 6, Dolph depo. 30:8-11; Ex. 2, Riddle depo. 21:20-22:9.

77. That policy is contained in the employee handbook, of which Plaintiff received a copy. Ex. 3, Depo. Ex. 8; Ex. 1, Pltf's depo. 97:4-16; Ex. 4, Depo. Ex. 7.

78. Any time an employee removes merchandise from the store without paying for it, that is considered theft. Ex. 6, Dolph depo. 30:12-16; Ex. 2, Riddle depo. 22:1-9, 23:1-7; Ex. 8, Lewis depo. 47:7-13; Ex. 11, Kane depo. 35:7-15; Ex. 16, Barry Stewart depo. 27:7-18.

79. Throughout the entirety of Mr. Dolph's time as a manager, he and the other Store Directors for whom he has worked have had a policy of terminating the employment of any employee who takes money or store merchandise from the store. Ex. 6, Dolph depo. 30:8-16; Ex. 7, Dolph Decl. ¶¶ 12-13.

80. There have been no occasions when Mr. Dolph was aware that an employee took merchandise or money from the store and that employee remained employed. Ex. 7, Dolph Decl. ¶ 14.

81. Mr. Dolph views it as a trust issue, and the dollar amount in question is irrelevant. Ex. 6, Dolph depo. 48:5-13, 100:5-101:2; Ex. 7, Dolph Decl. ¶ 15.

82. The store employs hundreds of people, and hundreds of customers go in and out of the store every day, so it is impossible to watch what everyone is doing. Ex. 7, Dolph Decl. ¶ 17.

83. If an employee takes merchandise without paying for it, Mr. Dolph cannot trust the employee will not do it again (and does not know if they have done it in the past), so Mr. Dolph's direction is to terminate that person's employment. Ex. 7, Dolph Decl. ¶ 18.

84. Mr. Dolph provided that direction to Cate Riddle, and as a result, Ms. Riddle has followed the same policy. Ex. 7, Dolph Decl. ¶ 18.

85. Typically, Ms. Riddle handles the terminations of part-time employees, and Mr. Dolph handles the terminations of full and regular-time employees. Ex. 2, Riddle depo. 44:10-14; Ex. 5, Riddle Decl. ¶ 14.

86. Exhibit 17 contains termination forms for the employees who have been fired for theft at the St. Joseph store during the last five years. Ex. 5, Riddle Decl. ¶ 40.

87. Following is additional information about those employees and their terminations:

| Employee Initials | Date of Termination | Year of Birth |
| --- | --- | --- |
| C. S. | 3/8/2019 | 1989 |
| D. R. | 10/18/19[4] | 2001 |
| T. M. | 10/7/20 | 2001 |
| A. J. | 10/7/20 | 2000 |
| J. G. | 12/16/20 | 1979 |
| S. Q. | 4/30/21 | 1989 |
| A.M. | 12/29/21 | 1984 |
| K. A. | 4/12/22 | 1951 |
| M. D. | 5/29/22 | 1972 |
| B. T. | 7/28/23 | 1950 |
| K. E. | 2/20/24 | 1967 |

Ex. 17; Ex. 5, Riddle Decl. ¶ 42.

---

[4] This employee was fired for consuming a bottle of Mountain Dew without paying for it. Ex. 17 at page 2 (Termination form for D.R.); Ex. 8, Lewis depo. 49:15-50:11.

12

88. Although videos were viewed as part of the investigations in at least three[5] of the terminations, there were no video clips made or retained. Ex. 5, Riddle Decl. ¶ 43.

89. None of the individuals fired for theft since Mr. Dolph has been the Store Director has any known disabilities. Ex. 5, Riddle Decl. ¶ 44; Ex. 7, Dolph Decl. ¶ 30.

90. During Ms. Lewis's tenure at the store, other employees have been fired for stealing chips and/or candy bars. Ex. 8, Lewis depo. 43:23-44:1.

91. Plaintiff understood it was against company policy to take merchandise without paying for it. Ex. 1, Pltf's depo. 100:20-23.

92. Plaintiff agrees that if he did take merchandise (discussed below) without paying for it, that would be theft and would be against the policy. Ex. 1, Pltf's depo. 100:24-101:5.

93. Plaintiff knew the theft policy was consistently enforced and knew he could be fired for taking merchandise without paying for it. Ex. 1, Pltf's depo. 151:19-152:7; Ex. 18, Depo. Ex. 19.

**The Theft Event**

94. On June 3, 2023, Plaintiff clocked in at 7:17 a.m. and clocked out at 2:27 p.m. Ex. 19, Depo. Ex. 13; Ex. 5, Riddle Decl. ¶ 48; Ex. 1, Pltf's depo. 113:11-19.

95. The time clock is located up the stairs that are located in the back room. Ex. 1, Pltf's depo. 117:15-20; Ex. 9, Lewis Decl. ¶ 11.

---

[5] As with Plaintiff's termination, Hy-Vee retained the still shots for the terminations where video was reviewed, which are also part of Exhibit 17.

13

96.     After clocking out that day, Plaintiff went down the stairs and took at least three bags of Kettle brand chips off the employee discount rack. Ex. 1, Pltf's depo. 116:10-118:2, 120:13-18, 122:5-123:25, 134:9-16, 154:3-155:16; Ex. 15, Depo. Ex. 20; Ex. 9, Lewis Decl. ¶ 12.[6]

97.     The chips cost 25 cents per bag. Ex. 2, Riddle depo. 37:23-38:1.

98.     The first page of Exhibit 20 (Depo. Ex. 14) is a picture of Plaintiff at 2:28 p.m. on June 3, 2023. Ex. 9, Lewis Decl. ¶ 21; Ex. 1, Pltf's depo. 116:10-118:2.

99.     The area to Plaintiff's right in the picture is the employee discount shelf. Ex. 1, Pltf's depo. 118:3-9; Ex. 9, Lewis Decl. ¶ 22.[7]

100.    The picture shows Plaintiff heading toward the produce cooler. Ex. 1, Pltf's depo. 118:25-119:2.

101.    Plaintiff then went through the produce cooler and into the trim room, placed the chips in a Hy-Vee bag, and then went to the restroom. Ex. 1, Pltf's depo. 119:3-120:18, 122:5-123:1, 134:9-16; Ex. 9, Lewis Decl. ¶¶ 24-27.

102.    Plaintiff agrees that, at the time he placed the chips in a grocery bag, he had not paid for them. Ex. 1, Pltf's depo. 120:1-12.

103.    After Plaintiff came out of the restroom, another produce employee flagged him down to talk to him, but Plaintiff does not remember which employee and does not remember what they discussed. Ex. 1, Pltf's depo. 120:22-121:14.

---

[6] As discussed in Plaintiff's testimony cited in SOF 96, 101-104, Plaintiff does not know if this event occurred on June 3 or June 4, 2023, but he admits he took "about three bags of chips" from the employee discount shelf immediately after clocking out on one of those days, took the chips into the trim room, put them into a bag, took the bag carrying multiple bags of chips into the restroom without paying for them first, and left the store. Ex. 1, Pltf's depo. 116:10-123:5, 134:9-16, 154:3-155:16; Ex. 15. Ms. Lewis knows it occurred on June 3, 2023, because she included the date of the incident in the file name of the still shots she saved on June 5, 2023 and because she knows the event occurred on the Saturday before Plaintiff's termination. Ex. 9, Lewis Decl. ¶ 9; Ex. 8, Lewis depo. 8:17-24.
[7] There appears to be a typographical error in the question on page 118, line 4 of Plaintiff's deposition. It says, "looking again at Exhibit 14, first page Hy-Vee Store 131." It should say, "HV-Stewart 131," referring to the bates number.

14

104. Plaintiff then "thought [he] went up to the self-checkout register, paid for the chips, and left." Ex. 1, Pltf's depo. 120:22-121:4; Ex. 15, Depo. Ex. 20 (Charge of Discrimination) ("I selected about three bags of chips, thought that I had paid for them, and then I took them home with me.").

105. More specifically, Plaintiff believes he went to the self-checkout area, but he does not remember for sure. Ex. 1, Pltf's depo. 121:25-122:4, 122:5-123:1.

106. If he went to the self-checkout line, Plaintiff believes he paid with his debit card. Ex. 1, Pltf's depo. 128:24-129:10.

107. Plaintiff may have gotten sidetracked and walked out. Ex. 1, Pltf's depo. 144:4-22, Ex. 21, Plaintiff's Ex. 5.

108. Plaintiff admits he violated a consistently enforced company policy. Ex. 1, Pltf's depo. 152:3-7; Ex. 18, Depo. Ex. 19.

**The Theft is Reported and Investigated**

109. On June 3, 2023, sometime after 2:00, Archie Kane was in the back room, 30-40 feet from the employee discount shelf and witnessed Plaintiff take several pieces of merchandise from the employee discount rack and take them into the produce cooler. Ex. 11, Kane depo. 12:19-22, 13:16-19; 18:5-8.

110. Exhibit 20-A shows the legs and apron of an employee standing in the background, which Mr. Kane agrees may be him. Ex. 20-A[8]; Ex. 11, Kane depo. 63:19-25.

---

[8] Exhibit 20-A is identical to Exhibit 20 except a portion at the top of Exhibit 20 is called out and blown up.

15

111.	Mr. Kane also witnessed Plaintiff leave the trim room and head to the hallway where restroom is also located, with items in a bag and leave the store without paying for the merchandise. Ex. 11, Kane depo. 13:16-19, 16:2-10, 21:14-21, 29:2-10, 55:7-23; 57:6-23.

112.	At the time Mr. Kane witnessed this, neither Mr. Kane's supervisor nor Mr. Dolph was at the store. Ex. 11, Kane depo. 12:11-18.

113.	On the morning of June 5, 2023, which was the next day Mr. Kane worked, Mr. Kane told his supervisor, Ed Wiebe, he had seen Plaintiff take products off the employee discount shelf and take them into the produce cooler. Ex. 11, Kane depo. 13:16-19, 21:14-21; Ex. 10, Kane Decl. ¶ 6.

114.	Mr. Kane told Mr. Wiebe it looked very odd because Plaintiff took products into the cooler and then came out with bags and walked out of the store without stopping at a register to pay for them. Ex. 11, Kane depo. 24:3-21.

115.	Mr. Wiebe told Mr. Kane to tell Mr. Dolph. *Id.*; Ex. 11, Kane depo. 27:1-10.

116.	Mr. Kane then told Mr. Dolph he had seen Plaintiff take merchandise from the employee discount rack into the trim room, come out of the trim room with bags, and leave the store without paying for the merchandise, which Mr. Kane thought was odd behavior. Ex. 6, Dolph depo. 39:19-40:4; Ex. 11, Kane depo. 24:3-25:12, 28:25-29:10.[9]

117.	Based on this information, early that morning (June 5, 2023), Mr. Dolph asked Ms. Lewis to review camera footage of the area near the employee discount rack for the time period

---

[9] Notably, Mr. Kane repeatedly testified he saw Plaintiff take product from the discount rack (which Plaintiff does not deny). Ex. 11, Kane depo. 14:9-13, 16:16-20, and 24:11-17. Plaintiff's counsel then represented to Mr. Kane that Mr. Kane had previously testified he *did not* see Plaintiff pull items from the shelf. *Id*. at 29:11-15.

between 2:00 and 3:00 to see what had happened. Ex. 6, Dolph depo. 41:14-19; Ex. 8, Lewis depo. 8:17-24; 11:21-12:13.

118.     Ms. Lewis reviewed the footage and saw Plaintiff take several bags of chips from the employee discount rack and go into the produce cooler.  Ex. 4, Lewis depo. 12:22-25, 17:16-18:5, 24:20-22, 29:24-30:8, 31:8-18; Ex. 9, Lewis Decl. ¶ 12.

119.     Using a different camera, Ms. Lewis saw Plaintiff exit out of the trim room door approximately two minutes later and go into the hallway where the restroom is located. Ex. 8, Lewis depo. 19:23-20:7; Ex. 9, Lewis Decl. ¶¶ 24-25.

120.     Ms. Lewis saw Plaintiff come out of the hallway where the restroom is located several minutes later. Ex. 9, Lewis Decl. ¶¶ 23-24.

121.     Using several different cameras, Ms. Lewis then followed Plaintiff out of the store and did not see him pay for the chips. Ex. 8, Lewis depo. 18:6-13; Ex. 9, Lewis Decl. ¶ 20.

122.     After reviewing the video, Ms. Lewis showed Mr. Dolph the video, so he could see what she had seen. Ex. 8, Lewis depo. 19:5-12, 26:24-27:7, 36:22-37:9; Ex.6, Dolph depo. 42:9-25, 51:20-22, , 97:10-16, 101:10-15; Ex. 9, Lewis Decl. ¶ 32.

123.     Mr. Dolph then asked Ms. Lewis to watch video of all of the points of sale stations for the period of time between when Plaintiff picked up the chips and when he exited the store to see if he paid for the chips at any pay station during that time period. Ex. 8, Lewis depo. 19:23-20:7, 21:13-22:7; Ex. 9, Lewis Decl. ¶ 33.

124.     Ms. Lewis did so and told Mr. Dolph she had confirmed Plaintiff did not pay for the chips. Ex. 8, Lewis depo. 37:24-38:1; Ex. 9, Lewis Decl. ¶ 34.

125. Ms. Riddle also reviewed the video with Ms. Lewis to confirm it demonstrated that Plaintiff did not pay for the chips and saw the same thing Ms. Lewis and Mr. Dolph saw. Ex. 2, Riddle depo. 30:17-31:9; Ex. 5, Riddle Decl. ¶ 15; Ex. 8, Lewis depo. 36:17-21.

126. After they had both reviewed the video, Mr. Dolph and Ms. Riddle discussed how it was sad they were going to have to terminate Plaintiff's employment. Ex. 2, Riddle depo. 34:20-35:17.

127. They also discussed their mutual belief that it was difficult to understand why Plaintiff put the items in the bag if he did not plan to steal them. *Id*.

128. Mr. Dolph made the decision to terminate Plaintiff's employment due to theft of merchandise. Ex. 6, Dolph depo. 36:17-24, 38:15-39:5.

**Creation of the Still Shots**

129. Ms. Lewis took three still shots from the video and saved them in a security file. Ex. 8, Lewis depo. 22:13-24; Ex. 9, Lewis Decl. ¶ 9.

130. Exhibit 22 hereto is the electronic version of those photos, and Exhibit 20 is a printout of those photos.[10] Ex. 9, Lewis Decl. ¶¶ 13-20.[11]

131. The metadata shows Ms. Lewis saved the still shots on June 5, 2023, at 8:31 a.m., 8:34 a.m., and 8:38 a.m., respectively. Ex. 22, Digital photos, HV-Stewart 390; Ex. 9, Lewis Decl. ¶¶ 16-18.

---

[10] Plaintiff's Deposition Exhibit 12 (attached hereto as Ex. 23 and used in the depositions of Ms. Lewis and Mr. Kane) is also a photocopy printout of Exhibit 22, but the quality is less clear.

[11] The top of Exhibit 22/Exhibit 20 shows a person's legs and portion of an apron standing there. Exhibit 20-A contains a blow-up of Exhibit 20, which makes this easier to see. Mr. Kane wears a black apron at work, and that person may be Mr. Kane. Ex. 11, Kane depo. 63:19-64:12 (referencing Plaintiff's Depo. Ex. 12 (Ex. 23 hereto), a cloudier copy of Ex. 20).

18

132.    Mr. Dolph instructed Ms. Lewis to use the date and times from the video as the file names, so the date and times would also be captured. Ex. 9, Lewis Decl. ¶ 15.

133.    As a result, Ms. Lewis saved the screen shots with the following file names: "6-3 228pm Backroom.jpg" (picture of Plaintiff in the back room), "6-3 230pm Restroom.jpg" (picture of Plaintiff walking toward restroom); and "6-5 239pm South entry.jpg"[12] (picture of Plaintiff exiting the store). Ex. 22; Ex. 8, Lewis depo. 33:24-34:10; Ex. 9, Lewis Decl., ¶¶ 16-18.

**The Termination Meeting**

134.    Later that day (Monday, June 5, 2023), another manager told Plaintiff Mr. Dolph needed to talk to him, and took Plaintiff to Mr. Dolph's office. Ex. 1, Pltf's depo. 134:17-135:14.

135.    Mr. Dolph asked Plaintiff if he had taken chips recently and told him they did not believe he had paid for the chips. Ex. 1, Pltf's depo. 136:7-137:6.

136.    Mr. Dolph then showed Plaintiff video of Plaintiff taking the chips and walking through the store. Ex. 1, Pltf's depo. 137:7-17.

137.    Plaintiff does not remember seeing video past the main produce area and believes the video stopped there and did not show him walking out of the store. Ex. 1, Pltf's depo. 137:18-138:9; *but see* Ex. 15 (Charge of Discrimination) ("Mr. Dolph then showed me a video of me during a recent shift where I had picked up bags of chips and left the store with the bags of chips.").

138.    Mr. Dolph asked Plaintiff if he had taken the chips, and Plaintiff said if he did, he didn't remember not paying for them. Ex. 1, Pltf's depo. 138:10-13.

---

[12] This was a clerical error. Ms. Lewis saved the photos on June 5 and erroneously recorded the final photo with that date. Ex. 9, Lewis Decl. ¶ 18. As illustrated by the metadata, at the time she saved the photo, the photo was saved the morning of June 5, so it obviously did not capture something that had not yet occurred.

139. Mr. Dolph asked Plaintiff if he paid for them, and Plaintiff said he did not remember. Ex. 1, Pltf's depo. 138:10-15.

140. Mr. Dolph then said, "theft is theft and we've got to terminate your employment." Ex. 1, Pltf's depo. 138:16-18.

141. Plaintiff told Mr. Dolph if he took them without paying, he was sorry, and he can pay for the chips. Ex. 1, Pltf's depo. 138:19-139:3.

142. Mr. Dolph said that theft was theft. Ex. 1, Pltf's depo. 139:4-5.

143. During the meeting, Plaintiff said he believed he had paid with his debit card and asked if he could bring proof that he had paid. Ex. 1, Pltf's depo. 139:20-140:1; Ex. 6, Dolph depo. 37:10-11; Ex. 5, Riddle Decl. ¶ 17.

144. The last four digits of Plaintiff's debit card at the time were 4674. Ex. 1, Pltf's depo. 134:9-14.

145. Mr. Dolph told Plaintiff he would not be fired if he could produce proof that he paid. Ex. 63, Dolph depo. 37:10-11; Ex. 2, Riddle depo. 37:3-10.

146. Plaintiff signed the termination form at the end of the meeting. Ex. 1, Pltf's depo. 148:4-16; Ex. 24, Depo. Ex. 18.

147. According to Plaintiff, after the meeting, police officers escorted him out of the store. Ex. 1, Pltf's depo. 140:2-4.

148. At the St. Joseph Hy-Vee, it is the typical practice to escort employees out of the store when they are involuntarily terminated for reasons other than attendance. Ex. 2, Riddle depo. 39:19-25; Ex. 6, Dolph depo. 48:14-21.

20

149. When the store had security guards, they normally escorted terminated employees out of the store. Since they no longer have security guards, managers handle that task. Ex. 6, Dolph depo. 48:22-25; Ex. 5, Riddle Decl. ¶ 19.

150. When an employee or customer is caught stealing from the store, that person is typically banned from the store. Ex. 2, Riddle depo. 40:8-13; Ex. 5, Riddle Decl. ¶ 20.

151. As an example, a customer who took a donut, on sale for $1.79, without paying for it was banned from the store. Ex. 9, Lewis Decl. ¶ 36.

**Events After the Termination Meeting**

152. After the meeting and because Plaintiff indicated he had paid with his debit card, Mr. Dolph asked Ms. Lewis to search the system using the last four digits of Plaintiff's debit card to see if Plaintiff had purchased anything on June 3, 2023 with his debit card. Ex. 6, Dolph depo. 95:23-96:5; Ex. 8, Lewis depo. 21:13-17, 38:2-12; Ex. 9, Lewis Decl. ¶ 37.

153. Ms. Lewis found no record of Plaintiff purchasing chips and no record of any purchase from the time he took the chips to the time he exited the store. Ex. 8, Lewis depo. 38:2-12.[13]

154. After the termination meeting, Plaintiff went home and contacted his bank to ask if the bank could print anything relevant to the purchase he had made the prior weekend. Ex. 1, Pltf's depo. 141:8-142:3.

155. Plaintiff then went to the bank to obtain a printout and went to his mother's house. Ex. 1, Pltf's depo. 142:4-12, 129:13-130:12.

---

[13] Store records show a cash purchase associated with Plaintiff's loyalty account at 7:35 a.m. on June 3, 2023. That purchase included one bag of Deep River chips, which were not from the discount rack. Ex. 26, HV-Stewart 138; Ex. 9, Lewis Decl. ¶ 46. The only purchase Plaintiff made with his debit card on June 3, 2023, was made at 3:54 p.m. and did not include any chips. Ex. 9, Lewis Decl. ¶ 49; Ex. 27, List of Purchases Made with Plaintiff's Debit Card; Ex. 29. There is no evidence of any other purchase made by Plaintiff that day, with cash, a credit card, or a debit card.

21

156. Exhibit 28 (STEWART 0066) is a redacted version the document Plaintiff obtained on that day (June 5, 2023). Ex. 1, Pltf's depo. 130:3-15.

157. Exhibit 29 (STEWART 0068) is the unredacted version of that document. Ex. 1, Pltf's depo. 145:23-146:7.

158. The handwriting on the document is Plaintiff's mother's. Ex. 1, Pltf's depo. 132:10-14.

159. Exhibit 29 shows the purchase Plaintiff made at Hy-Vee at 3:54 p.m. on June 3, 2023 and a purchase he made at Hy-Vee at 6:12 a.m. on June 4, 2023. Ex. 29; Ex. 1, Pltf's depo. 131:9-132:9, 146:8-15.[14]

160. Neither of these purchases is the chips Plaintiff took from the discount rack. Ex. 1, Pltf's 132:22-133:7, 142:13-20; Ex. 30 (Receipt); Ex. 31 (Receipt); Ex. 9, Lewis Decl. ¶ 58.

161. Exhibit 29 does not show any other purchases at Hy-Vee on June 3, 4, or 5, 2023. Ex. 29; Ex. 1, Pltf's depo. 146:3-19.

162. Later that day (June 5, 2023), Plaintiff returned to the store with document from his bank. Ex. 1, Pltf's depo. 142:24-143:15.

163. He was met by the police officers, who took Plaintiff to the food court area where he waited until Mr. Dolph came down to get him. Ex. 1, Pltf's depo. 143:2-7.

164. Plaintiff showed the bank document to Mr. Dolph and told him he believed it should help prove that Plaintiff either did or did not pay for the products he took, and he believed he paid for them. Ex. 1, Pltf's depo. 68:17-69:23, 143:11-13.

---

[14] As noted above, the purchase Plaintiff made at 7:35 a.m. on June 3, 2023 was made with cash, which would not be listed on the debit card transactions. Ex. 26.

165. Mr. Dolph told Plaintiff they did not prove anything. Ex. 1, Pltf's depo. 69:24-25, 143:11-13.

166. Plaintiff agrees. Ex. 1, Pltf's 132:22-133:7, 142:13-20.

**Relevant Purchase Information**

167. Plaintiff does not have receipts for any product he bought at Hy-Vee from June 2, 2023 to June 5, 2023. Ex. 1, Pltf's depo. 67:21-68:8.

168. Exhibit 27 (Plaintiff's Ex. 13) is a report showing all purchases made with a debit/credit card ending in 4674 on and after April 29, 2023. Ex. 25, Rahmanovic Decl. ¶ 4.

169. Consistent with Plaintiff's own bank document, the report shows that the only debit card transaction Plaintiff made on June 3, 2023 was made at 3:54 p.m., and the amount of the sale was $15.72. Ex. 27; *see also* Ex. 30.

170. The purchase was for toilet paper, Simply Light drink mix, two Jarritos Mandarin sodas in bottles, and a 2-liter bottle of Sprite. Ex. 30, HV-Stewart 146; Ex. 1, Pltf's depo. 124:9-127:23.

171. Plaintiff made a cash purchase on June 3, 2023 at 7:35 a.m. for an energy drink and one regular-priced bag of Deep River chips. Ex. 26, HV 138; Ex. 1, Pltf's depo. 124:9-127:23.

172. Plaintiff has never had receipts from June 3, 2023 for any items other than those shown in the receipts at HV-Stewart 138 and HV-Stewart 146 (Exhibits 26 and 30). Ex. 1, Pltf's depo. 127:24-128:4.

173. Plaintiff made a debit card purchase at 6:12 a.m. on June 4, 2023 for two sodas and smokehouse bacon. Ex. 31, HV-Stewart 147; Ex. 9, Lewis Decl. ¶ 52; Ex. 1, Pltf's depo. 128:5-23, 134:9-14.

174. Plaintiff has never had any receipts from June 4, 2023 for any items other than those shown in that receipt. Ex. 1, Pltf's depo. 128:5-18.

175. Plaintiff made no other debit card transactions at Hy-Vee on June 3, 2023, June 4, 2023, or June 5, 2023. Ex. 27; Ex. 25.

176. Exhibit 32 contains a list of every purchase (cash, credit card, and debit card) made at every self-checkout lane in the St. Joseph store on June 3, 2023 and June 4, 2023. Ex. 25, Rahmanovic Decl. ¶ 6.

177. There were no purchases made for any Kettle brand or Deep River brand potato chips on June 3, 2023, between 2:27 p.m. (when Plaintiff clocked out) to 3:39 p.m. (when he left the store). Ex. 32; Ex. 9, Lewis Decl. ¶ 56.

178. There were no purchases for multiple bags of Deep River potato chips at any point in time on June 3, 2023. Ex. 32; Ex. 9, Lewis Decl. ¶ 57.

179. There were no purchases made for employee discounted potato chips at any point in time on June 3, 2023 or June 4, 2023. Ex. 32; Ex. 9, Lewis Decl. ¶ 58.

**The Video**

180. The video recordings in the store automatically record over themselves. Ex. 6, Dolph depo. 43:4-7; Ex. 8, Lewis depo. 53:6-15.

181. When video is part of an investigation leading to termination, Ms. Riddle typically requests still shots of the video for the file. Ex. 2, Riddle depo. 31:24-32:1, 49:12-18.

182. In the four years Ms. Riddle has been the HR Manager, she is not aware of any instance when video was retained for a termination because they keep the still shots as their documentation. Ex. 2, Riddle depo. 49:25-50:5, 51:25-52:3.

183. Most people who are fired file for unemployment. Ex. 2, Riddle depo. 47:23-48:2.

24

184. Ms. Riddle is not aware of any other instance when the person who filed for unemployment later filed a claim against the Company. Ex. 2, Riddle depo. 80:20-23.

185. In order to save more than 45 seconds of video, the store would need to contact the loss prevention department at the home office. Ex. 8, Lewis depo. 27:8-20.

186. Although the store could ask loss prevention to get involved for any theft, typically, the store only involves loss prevention for thefts over $1,000. Ex. 8, Lewis depo. 29:3-11, 43:7-9.[15]

187. Exhibit 33 is a copy of the unemployment file as received from the Missouri Division of Employment Security, which includes the still shots taken from the video, but not the actual video. Ex. 34, Deveney Decl. ¶ 4.

**Misc.**

188. Plaintiff is not aware of any other employee who took product from the store without paying for it. Ex. 1, Pltf's depo. 60:3-7.

189. If an employee takes merchandise and leaves the store without paying for it, Mr. Dolph assumes the employee intended to do so. Ex. 6, Dolph depo. 105:6-10.

190. If an employee leaves the store with a pen the employee was using at work or an apron the employee was wearing for his/her job, Mr. Dolph does not assume the employee intended to do so. Ex. 6, Dolph depo. 105:13-106:2; Ex. 7, Dolph Decl. ¶¶ 23-24.

191. Mr. Dolph agrees that if an employee took Hy-Vee property, such as an apron, home and did not return it, that would be theft. Ex. 6, Dolph depo. 31:8-11.

192. Mr. Dolph is not aware of that ever happening. Ex. 6, Dolph depo. 58:11-22.

---

[15] The home office may take steps to retain video in other instances, such as a slip-and-fall. Ex. 7, Dolph Decl. ¶ 33.

193. Mr. Dolph came to his deposition from work (at the Hy-Vee store) and returned to work at the Hy-Vee store after his deposition. Ex. 7, Dolph Decl. ¶ 26.

194. At his deposition , Mr. Dolph had a box cutter in his pocket because he was using it before he left the store and intended to use it again when he returned. *Id*. at ¶ 27.

195. The box cutter fell out of Mr. Dolph's pocket at Plaintiff's counsel's office, so Ms. Riddle returned it to the store. Ex. 5, Riddle Decl. ¶¶ 24-25.

## III. ARGUMENT

### A. SUMMARY JUDGMENT STANDARD

Summary Judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once the movant demonstrates the absence of a genuine issue of fact, the non-movant must respond by submitting admissible evidentiary materials that set out specific facts showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Mere allegations not supported with specific facts are insufficient to establish the existence of a material issue of fact and will not withstand a summary judgment motion." *Depositors Ins. Co. v. Wal-Mart Stores, Inc.*, 506 F.3d 1092, 1095 n.3 (8th Cir. 2007). The nonmoving party may not rely on hearsay, speculation, or conjecture to create a genuine issue of material fact. *Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025, 1028-29 (8th Cir. 2006) (conclusory allegations and speculation insufficient to defeat summary judgment).

### B. HY-VEE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON BOTH OF PLAINTIFF'S CLAIMS.

Absent direct evidence of discrimination, courts apply the familiar burden-shifting framework of *McDonnell Douglas*. *Stuart v. General Motors Corp.*, 217 F.3d 621, 634 (8th Cir. 2000). Under the framework, Plaintiff bears the initial burden to establish a *prima facie* case of

discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). If Plaintiff establishes a prima facie case of discrimination, the burden then shifts to Defendant to articulate a legitimate, non-discriminatory reason for the challenged action. *Id*. The burden shifts back to Plaintiff to show Defendant's reason for the action is merely pretext for discrimination.

### 1. Plaintiff cannot establish a *prima facie* case for either of his claims.

#### a. Plaintiff cannot establish a *prima facie* case of age discrimination.

To establish a prima facie case of age discrimination under the Missouri Human Rights Act, Plaintiff must show (1) he suffered an adverse employment action; (2) his age was the motivating factor; and (3) he suffered damage as a result. *Johnson v. Midwest Division - RBH, LLC*, 88 F.4th 731, 737 (8th Cir. 2023) (*citing Eivins v. Missouri Dep't of Corr.*, 636 S.W.3d 155, 166 (Mo. App. 2021)). A motivating factor requires that age "actually played a role in the adverse action or decision and had a determinative influence on the adverse decision or action." *Johnson*, 88 F.4th at 737.

Here, Plaintiff can point to no evidence even suggesting let alone establishing that age motivated Hy-Vee's decision to terminate Plaintiff's employment. Rather, the undisputed evidence establishes that each and every time Mr. Dolph has become aware that an employee at the store took merchandise without paying for it, that employee was fired. SOF 79-80. And the ages of those fired at this store in the last five years range from 18 to 73. SOF 86, 87. Indeed, the age of the other theft termination in which Mr. Dolph was personally involved was 32. SOF 86, 87.[16]

Moreover, Mr. Dolph, Ms. Riddle, and Mr. Kane are all significantly older than Plaintiff, and Plaintiff can point to nothing suggesting his age had anything to do with their actions. In fact,

---

[16] Mr. Dolph signed the termination form for A.M., whose year of birth is 1984. SOF 87; Ex. 17.

at present, the St. Joseph Hy-Vee has 91 regular and full-time employees. SOF 26. Of those, 48 are over the age of 40, and 31 of them are over the age of 50 (much older than Plaintiff). SOF 27. Three current St. Joseph full-time employees are over the age of 70, and two of those employees were hired while Mr. Dolph was the Store Director. SOF 28. In fact, Mr. Dolph hired Ms. Riddle to be the store's HR Manager when Ms. Riddle was 71 years old. SOF 29, 30. In addition, the other two regular/full-time employees in the Produce Department at the time of Plaintiff's termination are over the age of 40. SOF 32, 33. Both of them are still employed, and one of them is nearly 70 years old. SOF 33.

The case law is clear that Plaintiff must set forth *some* evidence that his age had something to do with his termination. *See Williams v. FedEx*, No. 4:21-CV-00980-PLC, 2022 WL 179232, at *3 (E.D. Mo. Jan. 20, 2022) (plaintiff must provide more facts than just his age to find an inference of age discrimination); *see also Reed v. City of St. Charles, Mo.*, 561 F.3d 788, 790, 791 (plaintiff must provide more than speculation, conjecture, or fantasy to overcome summary judgment). Simply pointing to the fact that he is over 40 is insufficient as a matter of law. *See e.g. Johnson v. Westinghouse Air Brake Technologies Corporation*, No. 22-00560-CV-W-GAF, 2023 WL 6037434, at *10 (W.D. Mo. Aug. 8, 2023), aff'd, 104 F.4th 674 (8th Cir. 2024) (A plaintiff's protected status alone does not create a triable issue."); *Jenkins v. Radisson Hotel*, No. CIV. 07-5073, 2008 WL 544828, at *2 (W.D. Ark. Feb. 26, 2008) (relying on singular fact that plaintiff was over forty on the termination date is insufficient to prove a prima facie case of age discrimination.)

Even giving Plaintiff every benefit of the doubt, the record in this case is devoid of any evidence that Plaintiff's age (only 44 at the time of his termination) had anything at all to do with his termination, let alone that it was a motivating factor.

### b. Plaintiff cannot establish a *prima facie* case of disability discrimination.

To establish a *prima facie* case of disability discrimination, Plaintiff must show: (1) he was disabled, (2) he was discharged, and (3) his disability was the "motivating factor in the discharge." *Johnson v. Midwest Division – RBH, LLC*, 88 F.4th 731, 737 (8th Cir. 2023) (*quoting Ashby v. Woodridge of Missouri, Inc.*, 673 S.W.3d 537, 544 (Mo. App. 2023)).

Hy-Vee agrees Plaintiff can establish the first two elements, but he can point to no evidence suggesting his disabilities had any connection to his termination at all, let alone that they motivated it. Again, the undisputed evidence establishes that each and every time Mr. Dolph has become aware that an employee at the store took merchandise without paying for it, that employee was fired. SOF 80. And there is no evidence that *any* of the other employees had disabilities.

Moreover, Mr. Dolph had no knowledge of Plaintiff's disabilities. SOF 65-68. Plaintiff walks with a limp, but Mr. Dolph had no knowledge beyond that or any reason to believe Plaintiff had any impairments that interfered with Plaintiff's job duties. SOF 68. Mr. Dolph oversees approximately 350 employees, and those employees come and go on a regular basis. SOF 13-14. Mr. Dolph said hello to Plaintiff when he saw him, but he had no reason to become involved in Plaintiff's day-to-day responsibilities, which everyone agrees he performed well. SOF 63.[17]

Plaintiff has speculated that Hy-Vee terminated his employment because he planned to have a surgery for additional toe amputations in the future, but there is simply no evidence to support that. First, the record is devoid of evidence that *any* of the people involved in the investigation of Plaintiff's theft even had knowledge of the planned surgery. Rather, the record

---

[17] Furthermore, if Plaintiff needed accommodations, Mr. Dolph would have no concern about providing them. Employees at the Stores Mr. Dolph has overseen regularly request and obtain accommodations. SOF 3-6; Ex. 7, Dolph Decl. ¶ 44-45.

establishes the opposite. *See* SOF 75. When an employer does not know of a plaintiff's disability, it is "impossible for the company to have made that disability the basis for the termination." *Miller v. National Cas. Co.*, 61 F.3d 627, 630 (8th Cir. 1995); *see also Moye v. Kansas City Southern Railway Company*, No. 15-00423-CV-W-GAF, 2018 WL 11411322, at *9 (W.D. Mo. Aug. 22, 2018) (granting summary judgment because disability could not be a contributing factor in the employment decision where the employer had no knowledge of the disability).

Second, employees at the store take leaves of absence for medical procedures on a regular basis, and there is no evidence to suggest they are fired because of those procedures. *See* SOF 5. In fact, Plaintiff took a leave of absence in 2018 and returned with no issue. SOF 44-45. As with his age discrimination claim, Plaintiff must come forward with *some evidence* that his disabilities motivated his termination. *See Morrow v. Guitar Center Stores, Inc.*, No. 4:21-CV-00721-DGK, 2023 WL 2531734, at *6 (W.D. Mo. Mar. 15, 2023) (granting summary judgment to employer where plaintiff failed to provide evidence showing supervisors made comments about disabilities or treated plaintiff differently from non-disabled employees); *see also McConnell v. Pioneer Hi-Bred Int'l, Inc.*, 260 F.3d 958, 958 (8th Cir. 2001) (affirming summary judgment where plaintiff provided no evidence of "conduct or statements inferring that disability discrimination was the motivating factor" for the termination decision). Here, no such evidence exists.[18]

---

[18] Plaintiff admits he was never denied any accommodation he requested. SOF 62. As such, Hy-Vee assumes Plaintiff is not asserting a failure to accommodate claim, but any such claim would be futile regardless because he would still have to show an adverse action motivated by his disability, which he cannot do. *Dowling v. Boeing Company*, No. 4:21-CV-01414-SRC, 2023 WL 2645566, at *5 (E.D. Mo. Mar. 27, 2023). Moreover, Mr. Dolph, Ms. Riddle, and Ms. Lewis could not fail to accommodate a disability of which they had no knowledge. *Husinga v. Federal-Mogul Ignition Co.*, 519 F.Supp.2d 929, 960 (S.D. Ia. 20074) (finding an employer did not fail to accommodate where "the decision-maker had no knowledge of Plaintiff's claimed disability, and thus could not have any knowledge of his need for an accommodation.").

## 2. Hy-Vee's Legitimate Non-Discriminatory Reason.

On June 5, 2023, Mr. Kane informed Mr. Dolph that the previous Saturday (June 3, 2023), he had seen Plaintiff take product from the employee discount rack into the produce cooler, which he thought was odd. SOF 109, 113-116. Mr. Kane told Mr. Dolph he then saw Plaintiff exit the trim room with bags and leave the store without paying for the merchandise. SOF 114, 116. Mr. Kane believed this happened sometime after 2:00 p.m. SOF 109. Based on this report, Mr. Dolph asked Ms. Lewis to watch the video near the employee discount rack between 2:00 p.m. and 3:00 p.m. to see if she saw anything concerning. SOF 117.

Ms. Lewis did so and then showed Mr. Dolph the video, which showed Plaintiff take several bags of chips from the employee discount rack and enter the produce cooler. SOF 118-122. Plaintiff then exited the trim room with the chips in a Hy-Vee grocery bag and go into the restroom. *Id.* The video then showed Plaintiff exiting the restroom and leaving the store without paying for the chips. *Id.*

Mr. Dolph then asked Ms. Lewis to review all points of sale from the time Plaintiff took the chips until the time he left the store to make sure Plaintiff did not pay for the chips at any point along the way. SOF 123. Ms. Lewis did so and told Mr. Dolph Plaintiff did not pay for the chips. SOF 124.

Mr. Dolph then called Plaintiff to his office and asked him about the chips. SOF 134-135. Plaintiff admitted he took the chips at the end of his shift on Saturday and said he "thought" he paid for them. SOF 138-139. Mr. Dolph showed Plaintiff video and said they did not believe Plaintiff paid for the chips, so his employment would be terminated. SOF 135-140.

Mr. Dolph terminated Plaintiff's employment due to theft, which easily meets Hy-Vee's burden of producing a legitimate non-discriminatory reason. *See Britton v. City of Poplar Bluff,*

31

*Mo.*, 244 F.3d 994, 997 (8th Cir. 2001)("We do not question that theft is a legitimate ground for termination…and thus find that the city has met its burden to produce a legitimate, non-discriminatory basis for its action."); *see also Smith v. Monsanto Chemical Co.*, 770 F.2d 719, (8th Cir. 1985); *see also Pruett v. Krause Gentle Corp.*, 226 F.Supp.2d 983, 988 (S.D. Ia. 2002)("Suspicion of theft is a legitimate, nondiscriminatory reason for terminating an employee.").

### 3.    Plaintiff cannot establish pretext.

Plaintiff can meet his burden to show pretext by showing Hy-Vee's explanation has no basis in fact, or showing an unlawful reason more likely motivated the employer. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1047 (8th Cir. 2011). Pretext can also be shown when an employer failed to follow its own policies, treated similarly-situated employees in a disparate manner, or shifted its explanation of the employment decision. *Button v. Dakota, Minnesota & Eastern Railroad Corporation*, 963 F.3d 824, 833 (8th Cir. 2020). Even viewing the evidence in the light most favorable to Plaintiff, no reasonable jury could conclude Hy-Vee's reason for Plaintiff's termination was a pretext for discrimination.

As laid out above, the termination decision was indisputably grounded in fact. And none of the undisputed evidence in this case points to any suggestion that Mr. Dolph wanted to fire Plaintiff for any reason, let alone his disabilities or his age. The only reason Mr. Dolph even requested an investigation was based on a report that Plaintiff had taken merchandise into the produce cooler (which he admits doing), placed it in a grocery bag before paying for it (which he admits doing), and left the store without paying for it (which he does not remember). SOF 96-102, 104, 105, 109, 111, 113-116.

Even after one of Mr. Dolph's upper-level managers confirmed Plaintiff took merchandise without paying for it, he sent her back to the video to watch all of the points of sale. SOF 117-124.

32

In addition, he watched the video himself to be sure Plaintiff had actually stolen the merchandise. SOF 122. When Ms. Riddle was alerted to the situation, she also watched the video to be sure Plaintiff had stolen the merchandise. SOF 125.

Beyond that, after the termination meeting, Mr. Dolph told Ms. Lewis Plaintiff had said he believed he had used his debit card and provided Mr. Dolph with the last four digits of that card. SOF 143-144. Mr. Dolph gave Ms. Lewis the last four digits of the card and asked Ms. Lewis to search the store's system to see if she could find evidence Plaintiff paid for the chips. SOF 152. Ms. Lewis ran that search and then informed Mr. Dolph that Plaintiff had not made a purchase with the card in the relevant timeframe and had not paid for the chips she saw him took. SOF 152-153.

In short, Mr. Dolph did everything he could to locate proof that Plaintiff had paid for the chips. When evidence proved – indisputably – that Plaintiff had stolen from the store, Mr. Dolph made the same decision he has always made when he became aware of theft. SOF 79-80.

Plaintiff makes much of the fact that Hy-Vee did not save the video, but this is the very definition of a red herring for two reasons. First, Plaintiff admits he took the chips, went into the produce cooler and into the trim room, where he put the chips in a bag. SOF 96, 101-102. He further admits he took the bagged chips into the restroom and then left the store. SOF 101-104. Plaintiff believes he paid for the chips, but he is not sure, and the undisputed evidence illustrates he did not. SOF 105-107, 152- 159, 167-179. Thus, even if the video existed, the only thing it could possibly do is prove Plaintiff did not pay for the chips, which is already established.

Any argument that terminating an employee for stealing merchandise worth such a de minimis amount suggests pretext also lacks merit. Courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers."

*McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1129 (8th Cir. 1998). *See also Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781(8th Cir. 1995) ("the employment discrimination laws have not vested in the federal courts the authority to sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."); *Edmund v. MidAmerican Energy Co.*, 299 F.3d 679, 685-86 (8th Cir. 2002)("Employers are free to make employment decisions based on upon mistaken evaluations, personal conflicts between employees, or even unsound business practices."); *see also McKay v. U.S. Dept. of Transp.*, 340 F.3d 695, 700 (8th Cir. 2003) (explaining the inquiry is whether the employer gave an honest explanation rather than whether its action was wise, fair, or correct). Regardless of the value of the merchandise, Mr. Dolph has always terminated the employment of any employee known to have stolen merchandise. SOF 80.

Furthermore, even ignoring the undisputed evidence and assume Plaintiff paid for the chips, "[t]he critical inquiry in a pretext analysis 'is not whether the employee actually engaged in the conduct for which he was terminated, but whether the employer in good faith believed that the employee was guilty of the conduct justifying discharge.'" *Gunderson v. BNSF Ry. Co.*, 850 F.3d 962, 969 (8th Cir. 2017) (*quoting McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 861–62 (8th Cir. 2009)); *see also Richey v. City of Independence*, 540 F.3d 779, 784 (8th Cir. 2008) ("The normal rule in discrimination cases is that if an employer honestly believes that an employee is terminated for misconduct, but it turns out later that the employer was mistaken about whether the employee violated a workplace rule, the employer cannot be liable for discrimination.").

Here, Plaintiff admitted to taking the chips and told Mr. Dolph he thought he paid for them with his debit card. SOF 96-107, 138, 139, 143. Hy-Vee could find no evidence that Plaintiff made any purchase during the relevant time frame or that Plaintiff *ever* paid for the chips. SOF 152-166,

34

176-179. Plaintiff then brought a document from his bank, which Plaintiff *admits* does not show he paid for the chips. SOF 154-155, 164-166. In fact, the document proves Plaintiff did not pay for the chips – at least not with his debit card. SOF 168-169.

Thus, Hy-Vee genuinely believed Plaintiff had stolen the merchandise (which he did). Plaintiff was then treated exactly the same as other employees who stole merchandise. *See* SOF 79, 80, 84, 86, 87; *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 821 (8th Cir. 2017) (affirming summary judgment where plaintiff failed to provide evidence that similarly situated employees outside her class were treated differently); *see also Burton v. Mayorkas*, No. 4:19-CV-01026-BCW, 2021 WL 5541952, at *9 (W.D. Mo. July 13, 2021) ("…general assertions that similarly situated employees were treated differently is insufficient to demonstrate pretext for discrimination."); *Humphrey v. Dresser-Rand Co.*, No. 2:12CV32 JCH, 2013 WL 4805804, at *10 (E.D. Mo. Sept. 9, 2013) (finding no pretext where plaintiff offered no evidence showing similarly situated employees who did not complain of discrimination were treated better).

Moreover, the evidence actually establishes that Hy-Vee followed its well-established policy against theft, not that it deviated from any policy. Throughout their Hy-Vee careers, both Mr. Dolph and Ms. Riddle have terminated the employment of every employee they became aware stole money or merchandise. SOF 80, 84.

And, finally, Hy-Vee's reason for terminating Plaintiff's employment has remained consistent. Mr. Dolph told Plaintiff he was terminating his employment because he stole merchandise. SOF 140, 142. Hy-Vee responded to Plaintiff's unemployment claim by stating his employment was terminated for theft. SOF 187. This has been the consistent testimony in this case as well.

In short, the undisputed evidence in this case not only fails to suggest a pretext for discrimination, it actually proves the opposite.[19]

## IV.    CONCLUSION

Even assuming the truth of his testimony and viewing the evidence in the light most favorable to Plaintiff, he cannot establish either of his claims. Accordingly, Hy-Vee respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's claims with prejudice.

---

[19] Plaintiff has argued the decision to terminate his employment was pretextual because Plaintiff did not intend to steal the chips, but that argument misses the mark. When an employee takes merchandise without paying for it, Mr. Dolph assumes the employee intended to do so. SOF 189. This is true with Plaintiff as with other employees in the same circumstance, and in Plaintiff's case, there was even more evidence of intent because Plaintiff put the chips in a Hy-Vee bag before purchasing them and then left the store. SOF 101-102, 111. Offering to pay for the merchandise after-the-fact does not solve the problem. If that were Mr. Dolph's rule, the store would be a free-for-all, and an employee would only need to pay if they got caught. Finally, any argument that Mr. Dolph should have made an exception because Plaintiff was confused due to his disabilities fails for at least two reasons. First, Mr. Dolph had no reason to believe Plaintiff had any disability that caused him to be confused about whether he paid for merchandise. Second, employers do not have to allow their employees to steal as an accommodation for a disability. *See e.g. Harris v. Polk County, Iowa*, 103 F.3d 696, 697 (8th Cir. 1996)("We agree with the courts of appeal that recognize an employer may hold disabled employees to the same standard of law-abiding conduct as all other employees."); *Chavira v. Crown Cork & Seal USA, Inc.*, No. CIV. 13-1734, 2015 WL 4920094, at *10 (D. Minn. Aug. 18, 2015)(finding that an employer need not violate its own rules to accommodate an employee); Broadwater v. Minnesota Dept. of Human Servs., 22 F.Supp.3d 989 (D.Minn.2014) (finding requested accommodation not reasonable if it violated a legitimate, non-discriminatory policy); *McElwee v. County of Orange*, 700 F.3d 635, 645-46 (2d. Cir. 2012) ("Requiring others to tolerate misconduct, however, is not the kind of accommodation contemplated by the ADA."); U.S. Equal Emp. Opportunity Comm'n, EEOC-NVTA-2008-3, Applying Performance and Conduct Standards to Employees with Disabilities (2008) ("The ADA does not protect employees from the consequences of violating conduct requirements even where the conduct is caused by the disability.").

Respectfully submitted,

/s/ Jeannie M. DeVeney
Jeannie M. DeVeney, Bar No. 46885
jdeveney@littler.com
Telephone:  816.627.4405
Facsimile:  816.817.1453
Daniel B. Boatright, Bar No. 38803
dboatright@littler.com
Telephone:  816.627.4401
Facsimile:  816.817.7703
Peter Strickland, Bar No. 75059
pstrickland@littler.com
Telephone:  816.627.4443
Facsimile:  816.326.9063
LITTLER MENDELSON, P.C.
1201 Walnut Street, Suite 1450
Kansas City, MO  64106

**ATTORNEYS FOR DEFENDANT**


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 3rd day of July, 2025, a true and correct copy of the

foregoing was filed via the Court's CM/ECF system, which sent electronic notice to the following:

Kyle E. Murphy, Esq.
MURPHY, KINNEY, & SUMY, LLC
kyle@murphykinney.com
406 W 34th Street, Suite 623
Kansas City, Missouri 64111

R. Edward Murphy
MURPHY & MURPHY, P.C.
3101 Frederick Ave, Ste B
St. Joseph, MO 64506
ed@murphymurphylaw.com

**ATTORNEYS FOR PLAINTIFF**

/s/ Jeannie M. DeVeney
**ATTORNEY FOR DEFENDANT**

37